Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 692 | **DATE** | 3/12/03 |
| **CASE TITLE** | Hyundai vs. Hilson Machinery Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants Hyundai's motion to dismiss in part and denies it is part (12-1). Defendants are granted leave to file an amended counterclaim with regard to Counts 2,3,5 and 6 on or before 3/26/03. The amended counterclaim should omit from Counts 1 and 4 the aspects of those claims that the Court has dismissed. Plaintiff is directed to answer the amended counterclaim on or before 4/9/03.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 17 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 17 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | date/time received in central Clerk's Office | date mailed notice | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**
**MAR 1 7 2003**

HYUNDAI CONSTRUCTION )
EQUIPMENT U.S.A., INC., )
)
Plaintiff, )
)
vs. ) Case No. 02 C 692
)
HILSON MACHINERY CO. and )
STEVEN K. HILGEDICK, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Hyundai Construction Equipment Co. has sued one of its equipment distributors, Hilson Machinery Corp., for breach of contract, and Hilson's Vice President, Steve Hilgedick, for breach of guarantee. Hilson and Hilgedick have asserted a six-count counterclaim, including the following claims: 1) Hilson against Hyundai for breach of contract and warranty; 2) Hilson against Hyundai for fraud and misrepresentation; 3) Hilson against Hyundai for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); 4) Hilgedick against Hyundai for breach of contract and warranty; 5) Hilgedick against Hyundai for fraud and misrepresentation; and 6) Hilgedick against Hyundai for violation of ICFA. The case is before the Court on Hyundai's motion to dismiss the counterclaim.

### Allegations of the counterclaim

Hyundai is an Illinois corporation that manufactures heavy construction equipment, including loaders and excavators. In 1995, Hyundai contracted with Hilson, a California corporation, to distribute Hyundai's products. The parties executed three agreements during the

latter part of 1995. In September 1995, Hyundai and Hilson entered into a "Wholesale Financing and Security Agreement" ("Financing Agreement"), laying out the terms by which Hyundai would advance a line of credit to Hilson for purchase of Hyundai's products. In a separate agreement called the "General Continuing Guarantee" ("Guarantee"), Hilgedick personally guaranteed the Agreement. The third agreement ("Distribution Agreement") laid out the general terms of the distributorship. Attached to the Distribution Agreement were certain provisions governing the warranty obligations of Hyundai to initial users of its products ("Warranty Claims Procedures"). The Warranty Claims Procedures govern the parties' obligations regarding the administration and handling of warranty claims given to end consumers of Hyundai products. The customer warranty ("Warranty") is also attached to the Distribution Agreement. The Warranty is an express warranty by Hyundai to the initial user that all Hyundai products will be free from defects in material or workmanship for the shorter period of 360 days or 1,500 hours of operation. The remedy for any defects is limited to the repair or replacement of any defective parts or equipment. The Warranty disclaims all other warranties, express or implied, including warranties of merchantability or fitness for a particular use.

### Discussion

When considering a motion to dismiss for failure to state a claim, the Court reads the complaint liberally, granting the motion only if it is certain that the claimant can prove no set of facts in support of that claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *First Ins. Funding Corp. v. Federal Ins. Co.*, 284 F.3d 799, 804 (7th Cir. 2002). Hyundai argues that each of defendants' claims fails to state a claim upon which relief may be granted. Hyundai also argues that the defendants have not alleged fraud with the requisite particularity in Counts 2, 3, 5, and 6 of the counterclaim.

A.  **Count 1 (by Hilson for breach of contract and warranty)**

Count 1 is a claim by Hilson which includes several allegations of breach of contract and warranty. Specifically, Hilson alleges that Hyundai breached its contract with Hilson by: a) providing defective goods and machinery (¶12); b) failing to honor warranty claims (¶12); c) advertising and selling directly to Hilson's customers (¶13); d) selling Hilson used equipment and representing it as new (¶13); e) breaching implied warranties of merchantability and fitness for a particular use (¶14); and f) breaching the express warranty (¶14). All of these claims rely on promises purportedly made by Hyundai in the Distribution Agreement.

Hilson first alleges that Hyundai breached its contract by providing defective goods and machinery (¶12). According to the Distribution Agreement, Hyundai expressly warrants its products to be free from defects in material or workmanship, but only as to the initial user. *See* Distribution Agreement, ¶ 15.1. The contract includes no provision running in favor of Hilson as distributor concerning the quality of the products to be provided. Because Hilson does not allege that it was an initial user of Hyundai's products, this aspect of Count 1 does not state a claim for breach of contract.

Hilson next alleges that Hyundai failed to honor warranty claims, and in particular that Hyundai failed to pay freight charges (¶12). According to the Warranty Claims Procedure, the distributor – in this case Hilson – is initially responsible for fixing defective products but is to be reimbursed by Hyundai. Warranty Claims Procedures, ¶¶ A-2, C-2, C-3. This aspect of Count 1 states a claim.

Hilson next alleges that Hyundai breached its implied covenant of good faith and fair dealing by competing with the company. Specifically, Hilson alleges that Hyundai undercut Hilson's prices by marketing directly to end consumers in Hilson's territory (¶¶10, 13). Hyundai

3

argues that the Distribution Agreement contains no promise not to compete. An implied covenant of good faith and fair dealing exists in all contracts governed by Illinois law. *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1394 (7th Cir. 1991). However, "the doctrine of good faith merely directs a court towards interpreting contracts within the commercial context in which they are created, performed, and enforced, and does not create a separate duty of fairness and reasonableness which can be independently breached." *Echo, Inc. v. Whitson Co.*, 121 F.3d 1099, 1106 (7th Cir. 1997) (quoting 810 ILCS 5/1-203, Uniform Commercial Code Comment). Hilson's Distribution Agreement expressly gives Hyundai the right to sell its goods within the distributor's territory. Distribution Agreement, ¶ 1(c). The implied covenant of good faith and fair dealing cannot be interpreted to take away a right that the contract specifically gives to Hyundai. This aspect of Count 1 fails to state a claim.

Hilson further alleges that Hyundai breached its contract by selling Hilson used equipment and representing that it was new (¶13). However, the Distribution Agreement does not require the equipment sent to Hilson for resale to be new. Hilson may have a viable fraud claim based on the allegation of misrepresentation, and indeed it has asserted such a claim in Count 2. However, Hilson's allegation does not state a claim for breach of contract.

Hilson next alleges that Hyundai breached the implied warranties of merchantability and fitness for a particular purpose (¶14). Implied warranties, such as merchantability and fitness for a particular use, are deemed to be included in any contract for sale governed by the Illinois Commercial Code, including contracts concerning goods that are sold for resale, unless they are "conspicuously" excluded in the contract. *See* 810 ILCS 5/2-314 & 2-316. A disclaimer is "conspicuous" if it is "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it." *Id.* 2-316. Examples of conspicuous terms include

language in the heading or body of the text that is in capitals, contrasting type, or font. *Id.*
Hyundai's written warranty expressly disclaimed all implied warranties and did so in a way that was conspicuous. Warranty, ¶ 3; *see also* Warranty Claims Procedures, ¶ A-5. The disclaimer was valid and therefore defeats Hilson's claim for breach of implied warranty.

Finally, Hilson alleges that Hyundai breached its express warranty (¶14). However, as noted earlier, the express warranty protects only the initial user of Hyundai's products, in that it takes effect only upon "the date of delivery to the initial user." Because Hilson does not allege that it is an initial user of these products, it cannot state a claim for breach of express warranty.

In sum, Count 1 of the counterclaim states a claim only with regard to the allegations regarding Hyundai's alleged failure to honor warranty claims. Count 1 is otherwise dismissed for failure to state a claim.

## B. Count 2 (by Hilson for fraud and misrepresentation)

In Count 2, Hilson alleges that at the beginning of its contractual relationship with Hyundai and on unspecified occasions thereafter, Hyundai represented that it would provide new, not defective, goods; would support Hilson in its efforts as a distributorship; would not compete; and would honor all warranties and quickly resolve quickly any problems with defective equipment (¶17). Hilson asserts that these representations were "false and untrue from the inception" and that Hyundai "had a plan ... to put product in the marketplace by any means and in any condition ... so long as Hyundai makes a sale" (¶18). Hilson identifies several examples of Hyundai's allegedly fraudulent conduct, including providing defective equipment, or the wrong parts, tires, or engines; selling old equipment as new; and competing with Hilson by undercutting its prices and marketing directly to end users (¶18).

Hyundai argues that Count 2 is not alleged with the degree of particularity required by

5

Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." What this means is that a claim for fraud must specifically describe "the identity of the person who made the representation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997).

Count 2 fails to meet these requirements, as it does not specify the "who," "what," "when," "where," or "how" of the fraud. *See, e.g., Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 261 (7th Cir. 1998). Specifically, the claim fails to identify who made any allegedly false representations or to whom they were made, or specifically what defective equipment, parts, tires, or engines were provided and when. There is no identification of when or where any alleged misrepresentations were made, other than a vague reference to "at the inception of the relationship" and "thereafter." Moreover, neither claim gives specifics as to how these representations were communicated, or even what exactly was represented. Hilson's argument that it needs discovery to learn more specifics about the fraud strains credulity; surely if some misrepresentation was made to Hilson or defective items were provided by Hyundai (as Hilson alleges), Hilson has the information necessary to provide the requisite details. For these reasons, Count 2 is dismissed, with leave to amend.

C. **Count 3 (by Hilson for violation of Illinois Consumer Fraud Act)**

In Count 3, Hilson claims that Hyundai has violated the Illinois Consumer Fraud Act. This claim is based on the same allegations of fraud as Count 2. For the reasons stated earlier, we agree with Hyundai that Count 3 is not pleaded with sufficient particularity. Count 3 is therefore dismissed, with leave to amend.

6

### D. Count 4 (by Hilgedick for breach of contract and warranty)

In Count 4, Hilgedick alleges that Hyundai breached its purported contract with Hilgedick, Hilson's vice-president. Hyundai argues that this claim should be dismissed because it had no contract with Hilgedick other than the guarantee, which Hilgedick does not claim Hilson breached. Hilgedick responds by alleging that the Distribution Agreement is incomplete and that the parties have entered into several "agreements" since that time.

As a general rule, only a party to a contract may sue for breach of contract. *Sabath v. Mansfield*, 60 Ill. App. 3d 1008, 1016-17, 377 N.E.2d 161, 168-69 (1978) (sole stockholder of a corporation cannot sue individually for breach of the corporation's contract). In this case, because Hilgedick has not alleged contractual privity between himself and Hyundai, Count 4 is dismissed in with regard to the warranty claims.

Hilgedick also alleges that Hyundai breached the express warranty regarding defective Hyundai equipment. He alleges that he purchased Hyundai products for his own use (¶ 24). Because Hilgedick alleges that he was an "initial user" within the meaning of the Warranty, Hilgedick's claim for breach of express warranty states a claim.

### E. Count 5 (by Hilgedick for fraud and misrepresentation)

In Count 5, Hilgedick incorporates Hilson's allegations of fraud and misrepresentation from Count 2. Like Hilson, however, Hilgedick has failed to comply with the requirements of Rule 9(b). Count 5 is therefore dismissed, with leave to amend.

### F. Count 6 (by Hilgedick for violation of the ICFA)

In Count 6, Hilgedick alleges that Hyundai violated the ICFA by representing that goods were new when they were in fact used and that the products it sold to Hilgedick were of a particular standard when they were not. This claim is dismissed, with leave to amend, for the

7

reasons stated with regard to Counts 2, 3, and 5.

## CONCLUSION

For the reasons stated above, the Court grants Hyundai's motion to dismiss in part and denies it in part [docket item 12-1]. Counts 2, 3, 5 and 6 are dismissed, with leave to amend. Count 1 is dismissed except insofar as it as purports to state a claim regarding Hyundai's breach of its warranty obligations to Hilson. Count 4 is dismissed except insofar as it purports to state a claim regarding Hyundai's breach of its express warranty on items sold to Hilgedick. Defendants are granted leave to file an amended counterclaim with regard to Counts 2, 3, 5 and 6 within 14 days of this order. The amended counterclaim should omit from Counts 1 and 4 the aspects of those claims that the Court has dismissed. Plaintiff is directed to answer the amended counterclaim within 14 days thereafter.

MATTHEW F. KENNELLY
United States District Judge

Date: March 12, 2003